UNITED STATES, Appellee

v.

RICHARD G. LONG, Private, U. S. Marine Corps, Appellant

5 USCMA 572, 18 CMR 196

No. 5503

Decided April 1, 1955

Lt Harold Hoag, USN, for Appellant.
Lt James F. Chapman, USNR, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

I

The accused was arraigned before a special court-martial on a charge of violating Article 92, Uniform Code of Military Justice, 50 USC § 686. Following his plea of guilty to the one specification, the court-martial imposed a sentence of bad-conduct discharge, forfeiture of $60.00 a month for two months, and confinement at hard labor for three months. The findings and sentence reach us unchanged after in-termediate appellate action. Review in this Court was originally granted to consider whether the appointment of an enlisted man as defense counsel was erroneous and prejudicial to the rights of the accused. Subsequently, we authorized arguments on an additional issue, that is, whether the convening authority was disqualified to act as such by reason of his having signed certain service record entries which were introduced as prosecution exhibits.

While the case was pending in this Court, a third issue was pressed on us by motions from both the Govern-

**573**

ment and defense counsel. Each requested permission to file, and have considered by us, certain affidavits bearing on the first question mentioned above. We granted the motions, without indicating our views as to the competency of the documents and with reservations to the parties that they could present their respective contentions at the time of oral arguments. We will dispose of the issue arising out of those affidavits and related matters first.

## II

Paragraph 6c of the Manual for Courts-Martial, United States, 1951, requires that officers be appointed as counsel in trials before special courts-martial. When the cause was taken under advisement by the board of review, one of the issues considered was whether the convening authority's failure to appoint an officer to counsel and defend the accused deprived the court-martial of jurisdiction. The issue was properly before the board as paragraph 68b of the Manual provides that lack of legal power to hear and determine the guilt or innocence of an accused cannot be waived and may be asserted at any time. In order to resolve the jurisdictional question, the board of review took cognizance of Rule IX.F.2, Uniform Rules of Procedure for Proceedings in and Before Boards of Review, which provides that matters outside the record of trial may be considered by those boards on such questions. The board concluded rightly that the court-martial was not divested of jurisdiction through failure to comply with the Manual provision but, after arriving at that result, it concluded to consider the question within regular review channels. In doing so, it noticed a letter in the files addressed to The Judge Advocate General of the Navy which bore the reputed signature of the accused. The communication contained the following statement:

"In view of the fact that I had enlisted counsel by my own request I have been advised that I should request appellate counsel."

The board affirmed the findings and sentence principally for the following reason:

"In the absence of such a statement by the accused, this Board would be constrained to hold that while the designation of a non-commissioned petty officer within an appointing order of a special court-martial may not deprive the court of jurisdiction, it is definitely violative of 'the long-standing custom in the service to appoint *officers* only to serve as counsel in military courts-martial.' (Emphasis supplied.) United States v. Goodson, 1 USCMA 298, 3 CMR 32."

By the language used it appears that the board, in its decision on an issue which admittedly was not jurisdictional, gave great weight to the statement contained in the request of the accused. In view of that holding, one need not wonder why affidavits for the respective purposes of weakening or bolstering accused's admission were filed in this Court by defense and Government counsel. However, in view of our disposition of this case, we do not enter the battle concerning these subsequent affidavits except to point out that they would have been unnecessary had the board of review proceeded in an orderly manner. If an appellate agency is going to use any post-trial information as a basis for its decision, on jurisdictional matters or in any other permissible areas, each party should be afforded an opportunity to present his, or its, side of the dispute. Here, before basing an affirmance on a post-trial admission of the accused, he should have been accorded the right to make any explanation, denial, or avoidance which was available to him. At the least, he was entitled to be confronted with the testimony and meet the issue it posed if the evidence was to support, in whole or in part, the decision of the board of review. Obviously this case illustrates the necessity for a full and fair hearing on facts which may be used for the purpose of resolving a dispute. Presently the parties are attempting to litigate the controversy at this level, and we are not inclined to become a trial forum.

574

### III

Turning now to the issue which is dispositive of this case, we ■ find in the order appointing the special court-martial an officer designated as trial counsel and an enlisted man as defense counsel. The pertinent portion of the order reads:

"COUNSEL

"First Lieutenant Raymond W. Solomon, U. S. Marine Corps

Aviation Chief Machinist Mate David H. Plato, U. S. Navy

TRIAL COUNSEL, not a lawyer in the sense of Article 27.

DEFENSE COUNSEL, not a lawyer in the sense of Article 27."

The record of trial substantiates the contention that both appointees acted in the appointed manner at the trial. Because of the difference in rank, appellate defense counsel argues vigorously that the disparity between counsel was error which prejudiced the rights of the accused and that it requires reversal in this case. However, interwoven with the claimed disparity is the probability of prejudice flowing out of the failure on the part of the convening authority to furnish the accused with legally appointed counsel in addition to individual counsel.

While the Code contains no express prohibition barring enlisted men from acting as defense counsel in cases tried before special courts-martial, it does not authorize their appointment. Article 27(c) of the Act, 50 USC § 591, lists some relative requirements such as training, education, and legal competence as between trial and defense counsel, but rank is not mentioned. However, as stated previously, paragraph 6c of the Manual affirmatively provides that counsel appointed to act before special courts-martial shall be officers. We have held that that particular provision expresses the clear intent of Congress; that it is supplemental to, and consistent with, the Code; and that it should be complied with. United States v. Goodson, 1 US CMA 298, 300, 3 CMR 32. Therefore, the appointment of enlisted counsel to defend the accused, being inconsistent with the spirit of the Code and the express requirements of the Manual, was error.

The error in using an enlisted man was aggravated by a violation of Article 38(b) of the Code, 50 ■ USC § 613, which provides as follows:

"The accused shall have the right to be represented in his defense before a general or special court-martial by civilian counsel if provided by him, or by military counsel of his own selection if reasonably available, or by the defense counsel duly appointed pursuant to Article 27. Should the accused have counsel of his own selection, the duly appointed defense counsel, and assistant defense counsel, if any, shall, if the accused so desires, act as his associate counsel; otherwise they shall be excused by the president of the court."

Assuming without deciding that the accused requested the appointment of the Chief Machinist Mate as individual counsel, that does not do away with the other codal demands. The Code requires that, in the event individual counsel is selected, other military counsel be detailed by the convening authority and the accused be given the option of having both participate in his defense. Here that was not done; and accused was denied the opportunity of having an officer assist the enlisted man. When the errors are considered collectively, it appears to us that the accused was denied a statutory right. The Staff Judge Advocate on the staff of the officer exercising general court-martial jurisdiction so conceded; however, he recommended affirmance of the findings and sentence because of his conclusion that there was no prejudice to the accused. For reasons which will

**575**

hereinafter appear, we arrive at a different result.

It is obvious that when an accused pleads guilty, it is impossible to appraise fairly defense counsel's worth. However, as a general proposition, and when dealing with non-lawyers, the judgment, knowledge of military law, experience, and training of officers ought to teach them to be wiser and more judicious legal advisers than enlisted men. There may be instances when the reverse would be true, but Congress and the President laid the matter to rest by decreeing that an accused was entitled to have an officer advise and counsel with him. Moreover, it has long been the custom of the services to appoint officers only to serve as counsel on military courts, and not without good reason. Much of the value of a counselor is wrapped up in his pretrial preparations and decisions. Particularly is that true when the tactics employed result in entering a plea of guilty. In this instance, we are entirely without information as to the necessity for, or wisdom of, entering such a plea. It may be worth mentioning to suggest that the accused was charged with violation of Article 92 of the Code, supra, but the specification, while legally sufficient, does not allege the factual details of how, or in what way, the violation occurred. Picking up crumbs of information from the unsworn statement, failure to repair or being derelict in duty may have been included offenses. Appropriate strategy might have decreed a plea to a lesser included offense than the one permitting a sentence of confinement for two years had the case been tried by general court-martial. Of course, this special court-martial could not adjudge more than six months' confinement. But the court might be more inclined to fix a sentence of less severity than the one given had the accused pleaded guilty to an offense of less gravity. Again, some plausible defenses may have been available to the accused. Lastly, other decisions requiring the exercise of wise discretion may have confronted the enlisted counsel before he recommended a guilty plea, but we need not pursue the subject further. Congress provided that if individual counsel was selected, the appointed defense counsel should, if the accused desired, act as associate counsel. The President required that the appointed counsel be an officer. Both requirements were disregarded in spite of the fact that it is a simple matter, when an enlisted man is selected as individual counsel, to have appointed defense counsel present at trial unless his presence is waived by the accused. It is an easy task to reduce a request for individual counsel to writing so that enlisted men are not foisted on enlisted accused without the latter being adequately and properly informed as to their right to have an officer detailed to help in their defense. Here, the record fails to disclose the appointment of any qualified defense counsel and, if the enlisted machinist mate was selected by the accused, the record does not show that he waived his rights to the benefits and assistance of an officer consultant. Having been denied a substantial right, the accused has just cause for complaint and the findings and sentence must be reversed.

## IV

Two recent decisions of this Court, United States v. McClenny, 5 USCMA 507, 18 CMR 131, and United States v. Taylor, 5 USCMA 523, 18 CMR 147, announce principles which control the disposition of the second granted issue. It is the contention of appellate defense counsel that the convening authority was disqualified to act as such because he had verified certain service record entries which were used by the prosecution to influence the court-martial members in deciding the length and type of sentence to be adjudged. Briefly stated, the answer is that the officer who convenes the court does not become an accuser because official documents bearing his name were used at trial. His disqualification must arise before, or at the time, he convenes the court; and this record is barren of any evidence indicating this convening authority had any personal interest in the outcome of this criminal litigation at any time. See United States v. McClenny, supra.

What our recent cases point out as being significant is the question of

whether the one who signs a morning report is disqualified to act as reviewing authority after production and use of the evidence contained in the report. We held in the McClenny and Taylor cases, supra, that the test is whether the officer reviewing the record is faced with self-appraisal of credibility. We affirmed the holding in the Taylor case because the reviewing authority's testimony at the trial was unchallenged, and he was thus presented with no conflict of interest in making his review. This case presents the same situation. Here, the reviewing authority had signed three of the four exhibits introduced by the prosecution to show prior convictions of the accused. They were records which were required by the law to be executed, they were admitted into evidence as official documents, and their correctness is not questioned. We find in that state of facts no disqualification of the reviewing authority.

For the reasons set out in Section III, the findings and sentence are reversed and a rehearing is ordered.

Judge BROSMAN concurs.

QUINN, Chief Judge (dissenting):

I dissent.

The possible disadvantages to the accused which are suggested in the principal opinion are more imaginary than real. First, I find no misunderstanding as to the nature of the charge. From the record, it clearly appears that the court, counsel, and the accused, understood its real character. Thus, in a lengthy statement in mitigation which reviewed the accused's civil and military background, the defense counsel said:

". . . The charge to which the accused has pleaded guilty today is one of absenting himself from proper place of duty. He is charged under Article 92. He pleaded guilty; he was in fact guilty as charged. It could have been proved anyway, so there is no sense in wasting your time. What it amounted to is that the accused did, as alleged, leave the company area to go to the club for a sandwich and a cup of coffee, came back and took a shower. After his shower he dressed up and reported to the guard house for duty, at which place he was apprehended and charged. This offense is properly charged and has been pleaded as such but it is not an offense which has aggravation."

It is significant that while the trial counsel rebutted a number of the defense statements as set out in the mitigating statement, he did not deny the correctness of the defense counsel's appraisal of the charge. Neither was it disputed by the president of the court as the presiding officer.

Second, it does not appear that any of the parties misunderstood the extent of the punishment that could be imposed upon the accused. Since the case was before a special court it is obvious that the maximum confinement could not be two years as intimated in the principal opinion. It is also clear that the accused believed that his greatest disadvantage lay, not in the offense charged, but in the fact that he had four previous convictions. These were introduced in evidence. One was for sleeping on post and the other three were for failing to obey a lawful order. Arguing against the effect of these convictions, the defense counsel said:

"Every time the accused breathed in the wrong side of nostrils [sic] he was struck, hit, and put in front of a court-martial. No place in the defense counsel's investigation has there been evidence of a concrete attempt to rehabilitate this man."

It is noteworthy that the court adjudged a sentence which included confinement for only three months—a period which is authorized as additional punishment on evidence of two or more previous convictions. Manual for Courts-Martial, United States, 1951, paragraph 127c, section 8, page 228, as amended by Executive Order 10565, 19 FR 6299 (1954). Consequently, I find no evidence to support the conclusion that the accused was prejudiced by the appointment of an enlisted person as his counsel in a special court-martial trial. United States v. Goodson, 1 USCMA 298, 3 CMR 32. I would affirm the decision of the board of review.